# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ECC CENTCOM CONSTRUCTORS, LLC<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant. | No. 21-1169 C<br>(Judge Tapp) |

## DEFENDANT'S PARTIAL MOTION TO DISMISS

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

PATRICIA M. MCCARTHY
Assistant Director

BRET R. VALLACHER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-0465
Facsimile: (202) 305-2062
bret.r.vallacher@usdoj.gov

September 10, 2021                              Attorneys for Defendant

**DEFENDANT'S PARTIAL MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the complaint (ECF No. 1) for lack of jurisdiction to the extent it seeks $11,369,865.30 in damages due to an alleged breach of the covenant of good faith and fair dealing in Counts I, II, and III because neither those damages nor the legal theory on which they are based were presented in the certified claim that ECC Centcom Constructors, LLC (ECC) sent to the contracting officer. In support of this request, we rely upon the following brief and the attached appendix.[1]

**INTRODUCTION**

On June 16, 2011, the U.S. Army Corps of Engineers (USACE) awarded ECC a multiple award task order contract (MATOC) for construction and construction-related services. Compl. ¶ 6. On September 11, 2013, ECC was awarded Task Order 6, for the design and construction of the Transient Quarters and the Enlisted and Officer Dining Facilities in Manama, Bahrain. Compl. ¶¶ 6, 7, 12. Task Order 6 required ECC to complete all work within 710 calendar days of receipt of the notice to proceed. Compl. ¶ 13. On January 2, 2014, once a pending bid protest was resolved, USACE issued the Notice to Proceed, thereby establishing a contract completion date of December 13, 2015. Compl. ¶¶ 14, 18. As of March 2016—three months after the December completion date—ECC alleges that its progress stood at 67 percent complete. Compl. ¶ 107. On April 19, 2016, the contracting officer terminated ECC for default. Compl. ¶ 108.

---

[1] For purposes of this RCFC 12(b)(1) motion only, we accept plaintiff's factual allegations as true unless explicitly stated otherwise. Additionally, although "the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion," *Fed. Contracting, Inc. v. United States*, 128 Fed. Cl. 788, 797 (2016) (quoting Charles A. Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ. § 1346 (3d ed.)), we are concurrently filing our answer to the remaining allegations in the complaint in an effort "to secure the just, speedy, and inexpensive determination," RCFC 1, of this action.

In its complaint, ECC offers all manner of excuses for its admitted tardiness, ranging from hot temperatures (in Bahrain, a country in the Persian Gulf), to the issuance of modifications after the completion date (for which ECC does not, and cannot, allege that it sought additional time to complete). On the basis of these excuses, ECC seeks "contractual damages of $2,534,827.23 and 273 days of time extension," the "withdrawal" of a performance rating, and the conversion of the termination for default. *See* Compl. at 17. Although there is no merit to these claims, the restricted scope of a motion to dismiss—which is limited to the complaint's allegations and attachments—affords us no opportunity to disprove them at this juncture.[2] Instead, this motion is squarely concerned with this Court's jurisdiction to entertain ECC's other requested relief: "breach damages of $11,369,865.30 due to Defendant's violation of the duty of good faith and fair dealing." *Id.* Although ECC's complaint asserts that this claim for relief was "asserted in its December 31, 2019, certified claim," *id.*, it was not. As a result this Court lacks jurisdiction to consider it.

---

[2] However, it is worth noting that contractors cannot receive "damages" even if they successfully overturn a termination for default, but rather they receive a termination for convenience recovery. *See, e.g.*, *Best Foam Fabricators, Inc. v. United States*, 38 Fed. Cl. 627, 638 (1997) ("the rule has been established that if the contract contains a termination for convenience clause and the contracting officer could have invoked the clause instead of terminating, rescinding or repudiating the contract on some other invalid basis, the court will constructively invoke the clause to retroactively justify the government's actions, avoid breach and limit liability"). "When a fixed-price contract is terminated for convenience, it is essentially converted into a cost reimbursement contract" and the contractor is "'entitled to recover all allowable costs incurred in the performance of the terminated work, a reasonable profit on the work done, and certain additional costs associated with the termination.'" *White Buffalo Constr., Inc. v. United States*, 52 Fed. Cl. 1, 4 (2002) (quoting *Best Foam*, 38 Fed. Cl. at 638). Importantly, in the context of a fixed-price contract, the monetary value of any delay claims is limited to increasing the overall contract price ceiling, which may reduce the downward effect of any loss adjustment that may be applied to a contractor's termination for convenience recovery. *See generally* FAR 49.203; *see also* FAR 52.249-2(f) (generally, the amount paid to the contractor "may not exceed the total contract price"). The process for pursuing these costs is that a contractor submits its monetary claims to the contracting officer in "a final termination settlement proposal," and then the contracting officer issues a decision on that settlement proposal, which is then reviewable in this Court. *See* FAR 52.249-2 (e) & (j). Indeed, ECC explicitly seeks conversation of its termination for default to one for convenience as a remedy.

# ARGUMENT

## I. Legal Standards

In evaluating a motion to dismiss for lack of subject-matter jurisdiction, the Court presumes all *undisputed* factual allegations to be true and construes all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236–37 (1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, where, as here, the movant challenges specific jurisdictional facts set forth in the complaint, the Court is free to "look beyond the pleadings and 'inquire into jurisdictional facts' to determine whether jurisdiction exists." *K-Lak Corp. v. United States*, 93 Fed. Cl. 749, 752 (2010) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)).

"The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359 (Fed. Cir. 2018). Thus, for this Court to have jurisdiction, ECC has the burden to demonstrate that it has satisfied all of the jurisdictional requirements to properly invoke this Court's limited jurisdiction. As discussed below, ECC cannot meet its burden regarding its claim for $11,369,865.30 in damages for defendant's alleged breach of the covenant of good faith and fair dealing. Accordingly, the portions of its complaint seeking that relief should be dismissed for lack of jurisdiction.

## II. This Court Lacks Jurisdiction Over ECC's Claim For $11,369,865.30 In Damages Stemming From Defendant's Alleged Breach Of The Covenant Of Good Faith And Fair Dealing

"An action brought before the Court of Federal Claims under the [Contracts Disputes Act] must be based on the same claim previously presented to and denied by the contracting officer." *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (internal quotation marks and citation omitted). "This requirement necessarily . . . prohibits contractors from raising any new claims in court which were not first presented to the contracting officer."

3

*Affiliated Constr. Grp., Inc. v. United States*, 115 Fed. Cl. 607, 612 (2014).  As a result, if claims in the complaint "are not the same claims as those presented to the contracting officer in the certified claim, this court has no jurisdiction under the CDA to consider them." *E & E Enterprises Glob., Inc. v. United States*, 120 Fed. Cl. 165, 172 (2015) (internal quotation marks and citation omitted).

"Because the CDA does not define 'claim,' [courts] look to the Federal Acquisition Regulation ('FAR'), which defines a claim as 'a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to th[e] contract.'" *Securiforce*, 879 F.3d at 1359 (quoting 48 C.F.R. § 52.233-1(c)).  A claim need not "be submitted in any particular form or use any particular wording," but it must provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."  *Scott Timber*, 333 F.3d at 1365 (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)).

ECC submitted a certified claim to USACE's contracting officer on December 31, 2019. A1–85 (Certified Claim).[3]  In a section titled "Contractor's Request For Relief," ECC explains that it "seeks a time extension of 273 days, withdrawal of all assessed liquidated damages, delay damages of $2,534,827.23, a conversion of the wrongful termination for default to one for convenience, and withdrawal and reevaluation of the CPARS rating." A10.  However, neither the complaint's demand for $11,369,865.30 in damages, nor the complaint's claim regarding an alleged breach of defendant's duty of good faith and fair dealing are found in the certified claim. *Compare* A1–85 *with* Compl. ¶¶ 53, 75, 94; *id.* at 14, 17.

---

[3] "A_" refers to the bold pagination at the bottom of each page of our Appendix attached to this motion.

Because "jurisdictional standard[s] must be applied to each claim, not an entire case," jurisdiction only "exists over those claims which satisfy the requirements of an adequate statement of the amount sought and an adequate statement of the basis for the request." *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015). These jurisdictional requirements are in place to provide the contracting officer "an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request." *Id.* at 1006. However, the certified claim submitted fails on both metrics regarding the claim at issue here: it neither states the "basis" for a good faith and fair dealing claim nor states that $11,369,865.30 is the "amount sought" for such a claim. As a result, this claim must be dismissed in each instance in which it appears.[4] *See Emiabata v. United States*, 792 F. App'x 931, 935 (Fed. Cir. 2019) ("We have interpreted this presentment requirement to be a jurisdictional prerequisite to further legal action." (internal quotation marks and citations omitted)).

ECC may point to tangentially related allegations in its certified claim that the defendant "repeatedly and unreasonably rejected qualified interim personnel," and that defendant's "improperly rejecting interim personnel" contributed to delays. A2. While similar allegations are interspersed in the complaint, Compl. ¶ 38, the good faith and fair dealing claim in the complaint is "sufficiently distinct" from any claims before the contracting officer to defeat CDA jurisdiction in this court. *See Renda Marine, Inc. v. United States*, 71 Fed. Cl. 378, 392 (2006).

The Court of Appeals for the Federal Circuit has reasoned that the requirement that a submitted claim must "adequately specify both the amount sought and the basis for the request

---

[4] Somewhat confusingly, the complaint requests $11,369,865.30 in damages under sections pertaining to Count I, II, and III. *See* Compl. ¶¶ 53, 75, 94. Although we believe the claim only pertains to defendant's alleged failure to timely respond to ECC's substitution requests (Count I), we move to dismiss the complaint to the extent it pertains to any counts in which this claim or its amount is mentioned out of an abundance of caution.

5

implies that" courts "should treat requests as involving separate claims if they *either request different remedies* (whether monetary or non-monetary) *or assert grounds that are materially different* from each other factually or legally." *K-Con*, 778 F.3d at 1005 (emphasis added); *cf. Scott Timber*, 333 F.3d at 1365 (two claims are the same if they "arise from the same operative facts, [and] claim essentially the same relief"). Here, the good faith claim in the complaint both "request[s] different remedies" and "assert[s] grounds that are materially different" from the allegations in the certified claim letter.

      First, the good faith and fair dealing claim in the complaint requests "different remedies" on its face because it requests an additional $11,369,865.30 in "breach damages," Compl. ¶¶ 53, 75, 94; *id.* at 14, 17, whereas the certified claim does not request *any* monetary award other than the $2,534,827.23 in "delay damages" featured in both the complaint and certified claim. *Compare* A10 *with* Compl. at 17. To be clear: the certified claim does not seek any amount for any untimely responses (nor does it even mention the alleged untimeliness of defendant's responses). That alone makes it a "separate claim" from the allegations in the certified claim. Moreover, the "absence of a sum certain is 'fatal to jurisdiction under the CDA." *Securiforce*, 879 F.3d at 1359–60 (internal quotation marks and citations omitted).

      Second, the basis for the good faith claim is entirely absent from the certified claim. To begin, a claim for breach of the duty of good faith and fair dealing is entirely absent from the certified claim. *See E & E Enterprises*, 120 Fed. Cl. at 172 ("Plaintiff asserts in Count I of the complaint that the government has breached the implied covenant of good faith and fair dealing as a result of its dealings with E & E related to this contract . . . [h]owever, there is no formal claim in the certified claim submitted to the contracting officer which carries this label or sets forth this assertion."). Because ECC "did not submit to the contracting officer a clear and unequivocal claim that the [defendant] breached the contract or its duty of good faith," this Court

lacks jurisdiction to consider these claims. *Reliance Ins. Co. v. United States*, 931 F.2d 863, 866 (Fed. Cir. 1991).

Moreover, in addition to the claim being absent, the grounds upon which it relies (untimeliness) are not found in the certified claim. The primary focus of ECC's good faith and fair dealing claim is that defendant "breached all of these obligations by failing to review and approve ECC CENTOM's proposed interim personnel in a timely manner." Compl. ¶ 43; *see also id.* ¶ 44 ("As a direct result of USACE's failure to reasonably review and timely approve the proposed interim key personnel that ECC CENTCOM proposed, the start of critical project activities . . . was delayed at least 62 days."). But the certified claim's references to defendant's allegedly "improperly rejecting personnel," A2, presents a materially different ground than the untimeliness argument presented in the complaint. *See K-Con*, 778 F.3d at 1006 (holding that presenting "a materially different factual or legal theory (e.g., breach of contract for not constructing a building on time versus breach of contract for constructing with the wrong materials) does create a different claim"). In fact, the certified claim does not even mention any facts pertaining to the untimeliness of defendant's response. *See, e.g.*, *E & E Enterprises*, 120 Fed. Cl. at 176 (2015) ("When the administrative claim [before the contracting officer] focuses on one theory of relief and does not allege facts sufficient to satisfy any of the elements of the theory of relief asserted on appeal [in this court], it is unlikely that the appeal has arisen from the same operative facts." (alteration in original) (quoting *Simulation Tech., LLC v. United States*, 103 Fed. Cl. 105, 110 (2012))).

As a result, ECC's good faith and fair dealing claim in Count I (and apparently Counts II and III, *see* fn. 4, *supra*) is a "new claim that has not yet been considered by the contracting officer, and accordingly cannot come within [this Court's] subject-matter jurisdiction," *Affiliated Constr. Grp.*, 115 Fed. Cl. at 614. Because exercising jurisdiction would "subvert the statutory

7

purpose of requiring contractors first to submit their claims to the [CO] to allow the CO to receive and pass judgment on the contractor's entire claim," *Scott Timber*, 333 F.3d at 1366 (alteration in original) (internal quotation marks and citation omitted), this Court should dismiss the complaint to the extent it seeks $11,369,865.30 in damages due to an alleged breach of the covenant of good faith and fair dealing.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss Counts I, II, and III for lack of jurisdiction to the extent those counts seek $11,369,865.30 in damages due to an alleged breach of the covenant of good faith and fair dealing.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

/s/ Bret R. Vallacher
BRET R. VALLACHER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0465
Facsimile: (202) 305-2062
Email: bret.r.vallacher@usdoj.gov

September 10, 2021

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing document was served on counsel for plaintiff via electronic filing on September 10, 2021.

/s/ Bret R. Vallacher
BRET R. VALLACHER
